UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

HARRY HUESTON,

Defendant.

14-CR-332 (PAE)

ORDER

---

PAUL A. ENGELMAYER, District Judge:

The Court has received an application on behalf of defendant Harry Hueston seeking his compassionate release from Federal Correctional Institution ("FCI") Otisville pursuant to 18 U.S.C. § 3582(c), in light of the risk that the COVID-19 pandemic presents for inmates. *See* Dkts. 135 at 2–3 ("Def. Ltr."), 141 ("Def. Mem.").

On April 9, 2014, Hueston and his co-defendants John Garner and Dennis Furse invaded the home of a suspected narcotics trafficker. *See* Dkt. 81 ("Sent. Tr.") at 19; Gov't Mem. at 1. During his arrest, Hueston's leg was injured. *See* Def. Mem. at 2. On September 30, 2015, following Hueston's guilty plea to one count of conspiracy to commit Hobbs Act robbery, the Court sentenced Hueston to 180 months' imprisonment followed by three years' supervised release. *See* Sent. Tr. at 2, 27. Hueston contends that he has served almost five years of his 15-year sentence, Def. Mem. at 10; the Government acknowledges that Hueston's projected date of release for good behavior is April 10, 2027. *See* Gov't Mem. at 2. Assuming Hueston earns maximum good-time credits release, he has served about 40 percent of his sentence. *Id.*

On May 14, 2020, Hueston filed a request for compassionate release, in light of his medical conditions, with the warden of FCI Otisville. Def. Mem. at 1; *see also id.*, Ex. C. On

May 18, 2020, the warden denied Hueston's request. Gov't Mem., Ex. 1. On May 20, 2020, the Court received a *pro se* letter from Hueston, seeking early release in light of the COVID-19 pandemic. *See* Def. Ltr. The Court directed Hueston's trial counsel to file a letter in support of that application and that the Government thereafter submit a letter setting forth its position. Dkt. 135 at 1. On May 26, 2020, Hueston's counsel asked for a brief adjournment of those deadlines to ensure Hueston had administratively exhausted his remedies. *See* Dkt. 137. On May 27, 2020, the Court granted that extension. Dkt. 138. On June 17, 2020, in accord with that schedule, Hueston's counsel filed a memorandum in support. On June 19, 2020, the Government filed its response.

Hueston asks the Court to reduce his sentence to time served, on account of the risk COVID-19 poses to him. Def. Mem. at 1. Specifically, he suffers from high blood pressure, a torn left patellar tendon—stemming from the injury to his leg during his arrest—that required surgery, and an arm injury from overuse that had been treated with corticosteroids. *Id.* at 1–3. In his *pro se* letter, Hueston also states that he is a "borderline diabetic." Def. Ltr. The Government opposes Hueston's early release. *See* Gov't Mem. at 1. It argues that Hueston's motion should be denied because Hueston has not presented an extraordinary and compelling reason justifying his release, is a danger to the community, and has yet to serve half of his sentence. *See id.* at 5–13.[1]

Under 18 U.S.C. § 3582(c)(1)(A), "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," a court may reduce such defendant's sentence if it finds that

---

[1] The Government does not contend that Hueston has failed to exhaust his administrative remedies.

"extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).  The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable."  *Id.* § 3582(c)(1)(A).

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence.  *United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) (quoting 28 U.S.C. § 994(t)).  Relevant here, the Commission's policy statement and its corresponding commentary on § 3582(a)(1)(A) state that a court may reduce a sentence for "extraordinary and compelling reasons," including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[2]  U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A).  The defendant must also not be a danger to the community and the reduction must be consistent with the Commission's policy statement.  *Id.* § 1B1.13(2)–(3).

The first of these factors favors, to a degree, Hueston's early release.  The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation.  It presents a clear and present danger to free society for reasons that need no elaboration.  Further, the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it

---

[2] U.S.S.G. § 1B1.13(1)(A) references only "a motion of the Director of the Bureau of Prisons" because it has not yet been updated to reflect the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, which allows defendants independently to seek compassionate release relief from federal courts.  *See Ebbers*, 432 F. Supp. 3d at 422–23, 427.

gains entry, will spread.³ And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous courts, including this one, have ordered the temporary release of inmates held in pretrial or presentencing custody⁴ and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences.⁵

The Government disputes that Hueston is at a significantly heightened risk—*i.e.*, whether he is materially more vulnerable to the effects of COVID-19 than an average (non-high-risk)

---

³ *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (Mar. 30, 2020, updated May 20, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, No. 18 Cr. 713 (JMF), 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020) (citing *Interim Guidance on Mgmt. of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

⁴ *See, e.g.*, *United States v. Chandler*, --- F. Supp. 3d ---, No. 19 Cr. 867 (PAC), 2020 WL 1528120, at *1–3 (S.D.N.Y. Mar. 31, 2020) (granting bail application, pursuant to 18 U.S.C. § 3142(i), of defendant charged with being a felon in possession of a firearm); *United States v. McKenzie*, --- F. Supp. 3d ---, No. 18 Cr. 834 (PAE), 2020 WL 1503669, at *2–3 (S.D.N.Y. Mar. 30, 2020) (granting bond pending sentencing, pursuant to 18 U.S.C. § 3145(c), to defendant who had pleaded guilty to single count of assault with a deadly weapon and had previously been released on bond); *United States v. Witter*, No. 19 Cr. 568 (SHS), Dkt. 40 at 2–3 (S.D.N.Y. Mar. 26, 2020) (granting bond pending sentencing, pursuant to § 3145(c), to defendant who had pleaded to a narcotics offense); *cf. United States v. Stephens*, --- F. Supp. 3d ---, No. 15 Cr. 95 (AJN), , 2020 WL 1295155, at *3 (S.D.N.Y. Mar. 19, 2020) (granting defendant's request for reconsideration of bail conditions and releasing him to home confinement, while noting that, in the alternative, § 3142(i) would necessitate his temporary release).

⁵ *See, e.g.*, *United States v. Brown*, No. 18 Cr. 390 (PAE), Dkt. 472 at 4–7 (S.D.N.Y. June 17, 2020) (ordering compassionate release of 65-year-old defendant with several high-risk medical conditions who was not a danger to the community); *United States v. Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 at 2–4 (S.D.N.Y. April 6, 2020) (ordering compassionate release of defendant with an immune-inflammatory disease who had served all but 34 days of a four-month sentence); *see also infra* n.6.

inmate at FCI Otisville.  Specifically, the Government notes that high blood pressure alone does not raise an individual's COVID-19 risk; that Hueston's orthopedic issues do not make him more susceptible to COVID-19; that he has not recently or consistently taken corticosteroids (having last been prescribed them for 12 days in January 2019); and that Hueston's medical records do not support his claim to have "borderline diabetes." *See* Gov. Mem. at 5–7.  The Court assumes *arguendo* that Hueston's medical conditions put him at somewhat higher risk than the average inmate, while recognizing that these conditions are far less acute than those of many inmates who have successfully sought release in light of the pandemic.

Nevertheless, even viewing this factor in Hueston's favor, a reduction in his sentence is not supported under the § 3553(a) factors for two independent reasons.

First, the Court cannot find that Hueston "is not a danger to the safety of any other person or to the community," U.S.S.G. § 1B1.13(2), as is required for compassionate release.  Hueston's conduct in this case gravely endangered public safety.  As the Court recounted at sentencing, Hueston and his co-defendants "committed a truly violent and awful home invasion" involving placing "a gun to the head of an individual . . . holding a one-year-old baby" and later to the head of the baby, and threatening "to blow the baby's head off if he did not stop crying."  Sent. Tr. at 19.  Hueston personally beat up one of the victims; the attack stopped only when the defendants heard police sirens.  *Id*.  As the Court recognized, such conduct, apart from being sadistic, "is extraordinarily serious.  It [is] as serious as it gets or awful close.  It is horrifying." *Id.* at 20.  This incident was also not the first time that Hueston had been a threat to public safety—he is a career offender with a long criminal record of violent offenses, including attempted robberies and possession of a firearm during a drug trafficking crime.  *See id.*

5

at 21–22. For these reasons, the Court, at sentencing, found that specific deterrence necessitated a meaningful sentence along the lines of the sentence imposed, as none of Hueston's earlier terms in prison had "served as an effective wake-up call." *Id.* at 22. The same logic applies now. The Court cannot find today that the vastly shorter sentence Hueston seeks is compatible with public safety.

Independently, the Court cannot find that the application of the § 3553(a) factors favors Hueston's release after service of approximately 40% of his announced sentence. To be sure, one § 3553(a) factor, "the need to provide the defendant with needed . . . medical care," does weigh in Hueston's favor. *See* 18 U.S.C. § 3553(a)(2)(D). His health is compromised such that he is at a somewhat heightened risk for COVID-19, and his leg injury, although not a condition that COVID-19 aggravates, conceivably may impede Hueston's ability to care for himself were he to take ill. *See* § 1B1.13(1)(A) & cmt. n.1(A).

The Court, however, already took Hueston's physical impairment into account in fashioning the original sentence, but found it, while worthy of sympathy, not "a persuasive reason to impose any different length prison sentence." Sent. Tr. at 27. And in any event, the § 3553(a) factors that demanded a lengthy sentence are far more consequential to the just outcome in Hueston's case: to wit, "the nature and circumstances of the offense," "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." *See* 18 U.S.C. § 3553(a). The unusual gravity of Hueston's crimes requires a meaningful sentence to protect the public from further violence; to reflect just punishment for these crimes; and to deter others from committing similar "violent and horrific" acts. *See* Sent. Tr. at 19. For the reasons discussed in detail at

6

Hueston's sentencing, the Court found that a term of 180 months' imprisonment, within the Guideline range of 151 and 188 months, was necessary to achieve those goals.  *See* Sent. Tr. at 5, 27.  Reducing his sentence by more than half would badly disserve these important § 3553(a) factors.

Relevant too to the application of the § 3553(a) factors today, Hueston's case stands in sharp contrast to those in which the Court has ordered the release of heightened-risk inmates. In a number of cases, where an inmate seeking release had served most of his or her term of incarceration, this Court has found that a fresh assessment of the § 3553(a) factors justified early release.[6]  Hueston, on the other hand, is not yet at the midway point of his sentence.[7]

Accordingly, finding that Hueston continues to pose a danger to the community and that the § 3553(a) factors, in combination, do not support a reduction of his sentence, the Court denies Hueston's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

---

[6] *See, e.g.*, *United States v. Knox*, No. 15 Cr. 445 (PAE), Dkt. 1088 (S.D.N.Y. April 10, 2020) (defendant had served all but seven months of an 88-month sentence and was eligible for home confinement in two weeks' time); *Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 (S.D.N.Y. April 6, 2020) (defendant had served all but 34 days of a four-month sentence and had an immune-inflammatory disease); *United States v. Hernandez*, --- F. Supp. 3d ---, No. 18 Cr. 834 (PAE), 2020 WL 1684062, at *3 (S.D.N.Y. April 2, 2020) (defendant had served 17 months of a 24-months sentence).

[7] *See, e.g.*, *United States v. Nissen*, No. 17 Cr. 477 (PAE), 2020 WL 2614825, at *3 (S.D.N.Y. May 22, 2020) (denying compassionate release motion and finding that a reduction of a 27-month sentence to seven months would be "highly inconsistent" with the 3553(a) factors); *United States v. Butler*, No. 18 Cr. 834 (PAE), 2020 WL 1689778, at *3 (S.D.N.Y. Apr. 7, 2020) (denying compassionate release motion for recently sentenced defendant with asthma and a cardiac condition who had served 15 months of 60-month sentence); *United States v. Credidio*, No. 19 Cr. 111 (PAE), Dkt. 62 (S.D.N.Y. Mar. 30, 2020) (for similar reasons, denying compassionate release motion for a defendant at heightened risk of COVID-19 who had served just two months of a 33-month sentence).

The Court also orders the Government to file a properly redacted version of its opposition to Hueston's motion on the docket of this case no later than June 26, 2020.

The Clerk of Court is respectfully directed to terminate the motion pending at docket 141.

SO ORDERED.

*Paul A. Engelmayer*
PAUL A. ENGELMAYER
United States District Judge

Dated: June 25, 2020
       New York, New York